IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JON M.,[1] | Case No. 3:19-cv-01903-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Jon M. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I. PLAINTIFF'S APPLICATION**

Plaintiff was born in June 1959, making him fifty-two years old on April 30, 2012, his alleged disability onset date.[2] (Tr. 113, 127.) Plaintiff has a general equivalency degree and

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.*

PAGE 2 – OPINION AND ORDER

completed some college coursework, and he has past relevant work as a sales and operations manager. (Tr. 33, 52, 65.) In his application, Plaintiff alleged disability due to back and knee injuries, hearing deficits, depression, anxiety, asthma, diabetes, and a "[p]sychosocial disorder." (Tr. 114, 128.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on December 13, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 23.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on May 23, 2018. (Tr. 42-70.) On July 3, 2018, the ALJ issued a decision denying Plaintiff's application. (Tr. 23-33.) On April 19, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

---

(citations omitted). Thus, Plaintiff's date last insured of December 31, 2013 (*see* Tr. 23) reflects the date on which his insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2013, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

PAGE 3 – OPINION AND ORDER

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 23-33.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2012, the alleged disability onset date. (Tr. 25.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "[D]egenerative joint disease knee and shoulder, degenerative disc disease, and obesity[.]" (Tr. 25.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 27.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can "stand and walk [for] four hours total in an eight-hour workday," (2) Plaintiff can "sit for four hours in an eight-hour workday," and (3) Plaintiff can "occasionally

PAGE 4 – OPINION AND ORDER

climb, stoop, crouch, kneel, and crawl." (Tr. 28.) At step four, the ALJ concluded that Plaintiff was not disabled because he could perform his past work as a sales and operations manager. (Tr. 33.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide: (1) specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; and (2) legally sufficient reasons for discounting the opinions of Plaintiff's treating physician, Ann Marie Paulsen, M.D. ("Dr. Paulsen"), and the non-examining medical expert, Stephen Golub, M.D. ("Dr. Golub"). (Pl.'s Opening Br. at 5, 9-10.) As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence in the record. Accordingly, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## I.   PLAINTIFF'S SYMPTOM TESTIMONY

### A.   Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

PAGE 5 – OPINION AND ORDER

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 29, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard here.

#### 1.     Plaintiff's Reported Activities

First, the ALJ discounted Plaintiff's testimony based on his reported activities. (*See* Tr. 29-30, the ALJ stated that Plaintiff's testimony is "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," and then twice emphasized that Plaintiff engaged in "a wide variety of activities," such as walking "1/2 to 3/4 of a mile before needing to stop and rest," preparing meals, watering a garden, shopping in stores "1-2 times a week," and performing "physical exercises and stretching exercises most days").

PAGE 6 – OPINION AND ORDER

It is well settled that an ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). Even where the claimant's "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citation omitted).

Citing the Ninth Circuit's decision in *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015), Plaintiff argues that the ALJ erred in discounting his testimony based on his reported activities because the ALJ failed to specify which testimony he found not credible and why. (*See* Pl.'s Opening Br. at 13, arguing that the ALJ in *Brown-Hunter* "did exactly what the ALJ did in this case"). In *Brown-Hunter*, the Ninth Circuit held that the ALJ committed reversible error because "the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." 806 F.3d at 494 (citing *Burrell*, 775 F.3d at 1138). The Ninth Circuit explained that "the ALJ must provide some reasoning in order for [a reviewing court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," and that "inconsistencies identified independently by [a reviewing court] cannot

PAGE 7 – OPINION AND ORDER

provide the basis upon which [it] can affirm [an] ALJ's decision." *Id.* at 494-95 (citation omitted).

The Commissioner's response does not address or attempt to distinguish Plaintiff's case from *Brown-Hunter*. Instead, the Commissioner argues that the ALJ "did not arbitrarily discredit Plaintiff's testimony" because the ALJ "summarized" Plaintiff's testimony before "contras[ting] [Plaintiff's] allegations with the 'wide variety of activities' Plaintiff performed in spite of his impairments." (Def.'s Br. at 2, quoting Tr. 29). The Commissioner then compares portions of Plaintiff's testimony to some of Plaintiff's reported activities. (*See* Def.'s Br. at 3.)

Contrary to the Commissioner's argument, the ALJ never compared and contrasted Plaintiff's activities and testimony, let alone explain how any activity undermined Plaintiff's testimony. (*See* Tr. 29-30). That alone amounts to reversible error. *See Brown-Hunter*, 806 F.3d at 494-95 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the claimant's symptom] testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony. This falls short of meeting the ALJ's responsibility to provide the reason or reasons upon which [her] adverse determination is based.") (citations, ellipses, and quotation marks omitted).

The ALJ's error is also significant because it is not clear to the Court how the activities the ALJ identified are inconsistent with Plaintiff's testimony. For example, the ALJ noted that Plaintiff's function report indicates that he can shop in stores on a weekly basis for food and prescriptions and "walk 1/2 to 3/4 of a mile [on flat ground] before needing to stop and rest [for five to twenty minutes]" (Tr. 30, 246-48), but the ALJ did not point to any evidence that conflicts with Plaintiff's function report or explain why Plaintiff's ability to shop in stores and walk up to

three-quarters of a mile undermines his claim of disability. (*Cf.* Tr. 246, Plaintiff's function report indicates that Plaintiff "occasionally" cannot walk due to back spasms, pain in his back, hips, and legs, and needs to use pain medication that causes Plaintiff to be "to[o] tired and unstable"; Tr. 490, Plaintiff informed his medical provider that walking can "increase[] [his] symptoms").

The ALJ also noted that Plaintiff reported that he "prepared meals most days" (Tr. 30), but Plaintiff also reported that cooking is "painful" and it takes him "hours" and "[t]oo . . . long" to prepare "anything" unless he "can stand up to do it." (Tr. 245.) Additionally, the ALJ noted that Plaintiff reported that he "watered the garden" and performed "physical exercises and stretching exercises most days." (Tr. 30.) Plaintiff, however, reported that it "[t]akes [him] hours to do any[]" house or yard work, he "frequently ha[s] to stop [and] come back" to any house or yard work, and everything he does "takes a toll" and makes him feel "miserable." (Tr. 245.) As to Plaintiff's performance of physical and stretching exercises, the record reflects that Plaintiff's exercises are part of his physical therapy regimen and that Plaintiff reported that "20+ years" of physical therapy has not resulted in "significant changes." (Tr. 244, 490; *see also* Tr. 619, Plaintiff does "gentle stretching" and Plaintiff's physical therapy exercises "hurt[] his back more than [they] help[]"). It is not clear how these reported activities undermine Plaintiff's symptom testimony.

For these reasons, the ALJ erred in discounting Plaintiff's testimony based on his reported activities.

### 2. Conflicting Medical Evidence

The ALJ also discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence. (*See* Tr. 29-30, the ALJ found that Plaintiff's testimony is "not entirely consistent with the medical evidence" and later emphasized Plaintiff's physical exams

PAGE 9 – OPINION AND ORDER

showed that he was "alert and in no apparent distress," his "gait was non-antalgic with normal coordination," and he was "able to transfer independently to and from a cha[i]r"). As discussed above, the ALJ erred in discounting Plaintiff's testimony based on his reported activities. Thus, even if the objective evidence does not support Plaintiff's testimony, the ALJ may not rely on that as the sole reason to discredit Plaintiff's testimony. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony about her mental and physical impairments). Accordingly, the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

The Courts also notes that the allegedly conflicting medical evidence that the ALJ identified is unremarkable when compared to (1) an August 2013 magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine, (2) the ALJ's comments about Plaintiff's August 2013 MRI, and (3) Dr. Golub's comments about Plaintiff's August 2013 MRI. (*See* Tr. 30, 1289-90, Plaintiff's August 2013 MRI showed that he suffers from "moderately severe degenerative disc disease at the L4-5 level with severe right and moderately severe left lateral recess stenosis and compression of [the] descending bilateral L5 nerve roots," "[m]oderately severe degenerative disc disease at the L5-S1 level with associated mild bilateral L5 foraminal narrowing," "[f]acet arthropathy and effusions mild to moderate at the L3-4, L4-5 and L5-S1 levels," "[s]evere degenerative disc disease [at the] L2-3 [level] with left-sided and centralized predominance of

reactive endplate changes," and mild arthrosis in the sacroiliac joints; Tr. 48, the ALJ stated at the hearing, "[I]f I'd gotten that [August 2013 MRI] report, and I was having concordant pain issues [like Plaintiff], I would have . . . be[en] under the knife [for surgery] the next day."; Tr. 49, Dr. Golub stated that he did not "know what to make" of Plaintiff's August 2013 MRI because images taken several years after Plaintiff's date last insured of December 31, 2013 showed "significant resolution [over a] three-year period," but Dr. Golub added that the August 2013 MRI was "certainly significant" and suggested that Plaintiff might have suffered from "significant symptomatology," which "might require lying down, extra rest breaks, [and] absences from work on bad days").[3]

### 3.     Conclusion

For these reasons, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. (*Cf.* Def.'s Br. at 2-3, arguing that the Court should affirm the ALJ's decision to discount Plaintiff's symptom testimony based solely on the ALJ's findings regarding Plaintiff's activities).

///

///

---

[3] Dr. Golub also testified that he could not conclude that Plaintiff met or equaled a listed impairment based solely on Plaintiff's August 2013 MRI, because Plaintiff also needed to "have something on exam" like a negative "straight leg raise" test or "diminished reflexes or sensory decreases." (Tr. 51.) Dr. Golub added that he "did not see" any of this type of evidence in the records he reviewed before the hearing (i.e., Exhibits 1F through 29F or Tr. 351-1287) and "apologize[d]" if he "missed it." (Tr. 46, 51; Ct. Tr. Index at 2-4.) The record, however, shows that Plaintiff's August 9, 2013 straight leg raise and seated slump tests were "[p]ositive . . . on the left." (Tr. 638; Tr. 641, July 19, 2013, "Positive straight leg raise on the left. Positive seated slump on the left."; Tr. 680, April 13, 2012, describing a positive "straight leg raise bilaterally at 15 degrees").

PAGE 11 – OPINION AND ORDER

## II.  MEDICAL OPINION EVIDENCE

### A.  Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

///

///

///

### B. Analysis

Plaintiff argues that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discounting the opinions of the non-examining medical expert, Dr. Golub, and Plaintiff's treating physician, Dr. Paulsen.

#### 1. Dr. Golub

As discussed, Dr. Golub testified that he did not "know what to make" of Plaintiff's August 2013 MRI because images taken several years later showed "significant resolution [over a] three-year period," but Dr. Golub also noted that the August 2013 MRI was "certainly significant" and suggested that Plaintiff might have suffered from "significant symptomatology," which "might require lying down, extra rest breaks, [and] absences from work on bad days." (Tr. 49.) Dr. Golub also testified that he could not conclude that Plaintiff met or equaled a listed impairment based only on his August 2013 MRI, because Plaintiff also needed to "have something on exam" like a negative "straight leg raise" test or "diminished reflexes or sensory decreases." (Tr. 51.) Dr. Golub added that he "did not see" any of this type of evidence in the records he reviewed before the hearing (i.e., Exhibits 1F through 29F or Tr. 351-1287) and "apologize[d]" if he "missed it." (Tr. 46, 51; Ct. Tr. Index at 2-4.)

The ALJ assigned only "moderate weight" to Dr. Golub's opinion. (Tr. 31.) The ALJ discounted Dr. Golub's opinion because he "did not provide a clear residual functional capacity regarding [Plaintiff's] ability to work prior to his date last insured [of December 31, 2013]." (Tr. 31.)

Plaintiff argues that the ALJ erred in discounting Dr. Golub's opinion because the ALJ's reason for doing so "does not speak to [Dr. Golub's] confirmation of Plaintiff's pain and need to lie down, take breaks, and miss work in the context of the 2013 MRI findings." (Pl.'s Opening Br. at 10.) The Commissioner responds that Plaintiff "mischaracterizes" Dr. Golub's hearing

PAGE 13 – OPINION AND ORDER

testimony and "ignores Dr. Golub's later explanation that [Plaintiff's] imaging [alone] was insufficient to draw any conclusions, and [that] more [exam] information was needed." (Def.'s Br. at 5.)

The Court concludes that the ALJ failed to identify legally sufficient reasons, supported by substantial evidence, for discounting Dr. Golub's opinion. In the Court's view, Plaintiff did not mischaracterize Dr. Golub's testimony or ignore any explanation from Dr. Golub about Plaintiff's MRI results. To be sure, the questions the ALJ posed to Dr. Golub were focused almost exclusively on whether Plaintiff met or equaled a listed impairment between April 30, 2012, the alleged onset date, and December 31, 2013, the date last insured. (*See* Tr. 46-51.) Dr. Golub explained that it was "tough to answer" and "hard to draw [a] conclusion" about whether Plaintiff met or equaled a listing "prior to the end of 2013," because such a finding cannot be based "only on MR[I] findings" and Dr. Golub "did not see" any supporting evidence "like [a negative] straight leg raise [test] or diminished reflexes or sensory decreases." (Tr. 49-51.)

The record, however, demonstrates that Dr. Golub overlooked relevant evidence. (*See* Tr. 638, August 9, 2013, Plaintiff's straight leg raise and seated slump tests were "[p]ositive" on the left side; Tr. 641, July 19, 2013, "Positive straight leg raise on the left. Positive seated slump on the left."; Tr. 680, April 13, 2012, describing a positive "straight leg raise bilaterally at 15 degrees"). That is significant because neither the ALJ nor Plaintiff's hearing counsel directed Dr. Golub to this evidence, and because Dr. Golub responded in the affirmative when the ALJ specifically inquired whether Plaintiff's August 2013 MRI results were consistent with evidence indicating that Plaintiff needed to lie down, take extra rests breaks, and be absent "from work on

PAGE 14 – OPINION AND ORDER

bad days," which are functional limitations that would impact his ability to sustain full-time work. (Tr. 50.)

In summary, the Court concludes that the ALJ failed to identify legally sufficient reasons, supported by substantial evidence, for discounting Dr. Golub's opinion. *See, e.g.*, *Tam Phan Nguyen v. Berryhill*, No. 17-cv-01406, 2018 WL 4214478, at *2 (S.D. Cal. Sept. 5, 2018) (holding that the ALJ erred in discounting a physician's opinion on the ground that "he failed to identify any specific functional limitations or restrictions," because the ALJ's finding was "inaccurate").

### 2.  Dr. Paulsen

The Court does not address Plaintiff's argument that the ALJ also failed to provide legally sufficient reasons for discounting Dr. Paulsen's opinion because, as explained below, this case will be remanded for further proceedings.[4] *See Dasher v. Astrue*, No. 09-cv-6139-BR, 2010 WL 4923101, at *7 (D. Or. Nov. 29, 2010) ("In light of the Court's decision below that a remand for further proceedings is necessary to permit the ALJ to further consider the evidence consistent with this Opinion and Order, the Court need not address Plaintiff's remaining arguments.").

## III.  REMEDY

### A.  Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied

---

[4] On remand, the ALJ will re-evaluate Dr. Golub's opinion and, if necessary, hold another hearing so Dr. Golub may clarify any ambiguous testimony and address relevant evidence that he overlooked.

that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021. The credit-as-true standard is met if the following conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted).

### B.  Analysis

The Court concludes that there are unresolved conflicts and ambiguities between evidence the ALJ erroneously rejected and other record evidence, and therefore remands this case for further proceedings. *See Brandon v. Saul*, 821 F. App'x 857, 858 (9th Cir. 2020) (explaining that it is appropriate for a district court to remand for further proceedings where there are unresolved conflicts or ambiguities "between the erroneously rejected [evidence] and other record evidence"); *Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain [record] evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings.").

Specifically, there remain unresolved conflicts or ambiguities between Plaintiff's testimony, which the ALJ erroneously rejected and must reevaluate on remand, and other record evidence. For example, Plaintiff testified that he frequently needs assistance getting dressed and bathing due to his chronic pain, his house and yard work consists of watering the garden, washing his clothes, and "nothing else," he "no longer tend[s] to bees without [the] help of others," his impairments impact his ability to climb stairs, and he "fall[s] a lot" when walking or

PAGE 16 – OPINION AND ORDER

using stairs. (Tr. 60, 244-45, 247-48.) By contrast, other record evidence reflects that Plaintiff reported that he spent "6 months" cleaning up his father-in-law's "hoarder" house, getting the house ready to sell, and moving his father-in-law into assisted living; he used a "ladder" with "rung[s]" to access a tree stand for hunting; he dragged a "150 [pound] deer uphill"; he took his son deer hunting; he was able to "extract himself" from the tree stand's ladder when he got caught hanging upside down; he cleaned out a storage unit; he was a beekeeper; he "work[s] with bees on his property," which "involves ladders and climbing trees"; he "climbe[d] ladders" to "catch his bees"; he owns a firearm safety training program; he occasionally rides a motorcycle; he planned to go hunting and build honeybee hives; he "[b]uilt some closets for some rooms in [his] house"; and he "[d]id a lot of sanding." (Tr. 409-10, 499, 577-78, 583, 600, 603-04, 668, 671-72, 677, 679, 780-81, 805, 799, 809, 1023, 1056, 1169, 1170, 1182.)

Given this evidence, the Court exercises its discretion to remand this case for further proceedings.

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 21st day of December, 2020.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge